**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE**

| | |
|---|---|
| MARYVILLE BAPTIST CHURCH, INC., *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Civil Action No. 3:20-cv-00278-DJH ) |
| ANDY BESHEAR, in his official capacity as the Governor of the Commonwealth of Kentucky, | ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISSOLVE THE PRELIMINARY INJUNCTION**
**AND INJUNCTION PENDING APPEAL**

Defendant Governor Andy Beshear respectfully submits this Memorandum of Law in support of his Motion to Dissolve the Preliminary Injunction and Injunction Pending Appeal and to provide the Court with notice of supplemental legal authority that is dispositive of the First Amended Motion to Dismiss, filed May 12, 2020. The Supreme Court has issued intervening law clarifying that enjoining the mass gatherings order was improper.

"When presented with a motion for a preliminary injunction, a district court considers four factors: (1) the plaintiffs' likelihood of success on the merits, (2) whether the plaintiffs could suffer irreparable harm without the injunction, (3) whether granting the injunction will cause substantial harm to others, and (4) the impact of the injunction on the public interest." *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *O'Toole v. O'Connor*, 802 F.3d 783, 788 (6th Cir. 2015) (quoting *Gonzales v. Nat'l Bd. of Med. Examiners*,

225 F.3d 620, 625 (6th Cir. 2000)). A court retains jurisdiction to dissolve a preliminary injunction "[w]here 'significant changes in the law or circumstances' render the injunction no longer equitable. *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 414 (6th Cir. 2012).

This Court initially denied Plaintiffs' motion for a temporary restraining order, finding that the mass gatherings order did not discriminate against religious practice because it prohibited both secular and non-secular mass gatherings. (Doc. 9, PageID#: 224-25.) The Sixth Circuit disagreed. It held that Plaintiffs were likely to succeed under their First Amendment claims because the mass gatherings order "inexplicably applied to one group" but exempted "'life-sustaining' businesses" such as "law firms, laundromats, liquor stores, and gun shops[.]" *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, 614 (6th Cir. 2020). The Sixth Circuit enjoined enforcement of the mass gatherings order to the extent it applied to drive-in church services. *Id*.

Additionally, in a case that has now been consolidated with the instant case before the Sixth Circuit, for the same reasons set forth in *Maryville Baptist*, the Sixth Circuit issued an injunction pending the appeal of a denial of a preliminary injunction issued by a District Court in the Eastern District of Kentucky. *Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020). With that guidance, this Court applied strict scrutiny to the mass gatherings order and issued the Plaintiffs' requests for a preliminary injunction and injunction pending appeal. (Doc. 35, PageID #: 578-79.)

The *Maryville Baptist* and *Roberts* opinions are no longer good law, and therefore Plaintiffs no longer have any likelihood of success on the merits. On May 29, 2020, United States Supreme Court Chief Justice John Roberts, in a concurring Opinion in support of an Order denying a motion for injunctive relief, made clear that the mass gatherings order at issue in this

case passes constitutional muster and should not be enjoined. *South Bay United Pentecostal Church, et al. v. Newsom*, No. 19A1044, 590 U.S. --- (May 29, 2020).[1]

In *South Bay United*, like this case, the plaintiffs challenged a broad prohibition on mass gatherings that did not single out First Amendment protected activity. *Id.*, at *1. The *South Bay United* case arose from several executive orders issued by Governor Newsom that are analogous to Kentucky's mass gatherings order. *Id*. In particular, on March 19, 2020, Governor Newsom issued Executive Order N-33-20, ordering all individuals living in California to stay at home or their places of residence. *Id.* On May 7, 2020, Governor Newsom published a four-stage plan for reopening the state. Religious establishments could not reopen until the state progressed into stage 3, but offices, manufacturing, retail, groceries, and other services were allowed to open prior to stage 3. Further, California issued additional guidelines for religious organizations when they are allowed to open in stage 3, limiting attendance to 25% of building capacity or a maximum of 100 attendees.

South Bay United filed suit, arguing that allowing certain entities to open prior to religious organizations violated the Free Exercise Clause of the First Amendment. *Id.* The District Court and the Ninth Circuit each denied South Bay's request for preliminary injunctive relief. South Bay applied for an injunction to the United States Supreme Court, which also denied injunctive relief.

The Supreme Court upheld the denial of the same injunctive relief Plaintiffs sought here because "[o]ur Constitution principally entrusts '[t]he safety and the health of the people' to the

---

[1] On the same day, the Court also denied an application by two churches in Chicago to enjoin Illinois' stay-at-home order. *Elim Romanian Church, et al. v. Pritzker, Gov. of Illinois*, 19A1046 (Order List 590 U.S.) (U.S. May 29, 2020). Following that denial, the Seventh Circuit relied on *South Bay United* to affirm the lower court's denial of the preliminary injunction sought by the Plaintiff churches. *Elim Romanian Pentecostal Church v. Pritzker*, --- F.3d ----, 2020 WL 3249062 (7th Cir. June 16, 2020).

politically accountable officials of the States 'to guard and protect.'" *Id.* (quoting *Jacobson v. Massachusetts*, 197 U. S. 11, 38 (1905).) In particular, the Supreme Court held that the California Order prohibiting mass gatherings "appear[ed]" to pass First Amendment review because it applied similar restrictions to "lectures, concerts, movie showings, spectator sports, and theatrical performances, where large groups of people gather in close proximity for extended periods of time," while treating differently "only dissimilar activities, such as operating grocery stores, banks, and laundromats, in which people neither congregate in large groups nor remain in close proximity for extended periods." *Id.*, at *2.

Moreover, the *South Bay United* Opinion explained the importance of providing leeway to executive officials responding to an emergency with evolving scientific data, and admonished the federal courts not to interfere with such decisions. As the Opinion explained, "[w]hen [state] officials 'undertake[ ] to act in areas fraught with medical and scientific uncertainties,' their latitude 'must be especially broad.'" *Id.* (quoting *Marshall v. United States*, 414 U. S. 417, 427 (1974).) Especially during an emergency, state officials "should not be subject to second-guessing by an 'unelected federal judiciary,' which lacks the background, competence, and expertise to assess public health and is not accountable to the people." *Id.* (quoting *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U. S. 528, 545 (1985).) In closing, Chief Justice Roberts wrote:

> That is especially true where, as here, a party seeks emergency relief in an interlocutory posture, while local officials are actively shaping their response to changing facts on the ground. The notion that it is "indisputably clear" that the Government's limitations are unconstitutional seems quite improbable.

*Id.*, at *2-3.

Chief Justice Roberts' decision makes clear that the Sixth Circuit's opinion on which this Court relied is no longer good law, because it is entirely permissible for state officials to treat

4

laundromats and offices differently from places of mass gathering. *Id.* Importantly, both the plaintiffs and dissenters in *South Bay United* expressly relied upon the Sixth Circuit's decisions concerning Governor Beshear's Orders. But the Supreme Court, in a published opinion, has now explicitly spoken to the Sixth Circuit's reasoning and rejected it as a basis for enjoining temporary public health measures addressing COVID-19.

Since its issuance, courts continue to rely on *South Bay United* to uphold or deny enjoining state action in response to COVID-19. *See e.g., Texas Democratic Party v. Abbott*, --- F.3d ---, 2020 WL 2982937 (5th Cir. June 4, 2020); *Talleywhacker, Inc. v. Cooper*, --- F.Supp.3d ---, 2020 WL 3051207 (E.D.N.C. June 8, 2020); *Elkhorn Baptist Church v. Brown*, --- P.3d ---, 2020 WL 3116543 (Or. 2020); *Christian Cathedral v. Pan*, 2020 WL 3078072 (N.D.Cal. June 10, 2020); *Professional Beauty Fed. of California v. Newsom*, 2020 WL 3056126 (C.D.Cal. June 8, 2020); *Altman v. County of Santa Clara*, --- F.Supp.3d ----, 2020 WL 2850291 (N.D.Cal June 2, 2020); *Calvary Chapel Lone Mountain v. Sisolak*, --- F.Supp.3d ----, 2020 WL 3108716 (D.Nev. June 11, 2020); *High Plains Harvest Church v. Polis*, 2020 WL 3263902 (D.Colo. June 16, 2020); *League of Ind. Fitness Facilities and Trainers, Inc. v. Whitmer*, --- F.Supp.3d ----, 2020 WL 3421229 (W.D.Mich. June 19, 2020).

Plaintiffs raise the same claims here. Like California's order, Kentucky's Mass Gatherings Order meets this standard because it applied "[s]imilar or more severe restrictions . . . to comparable secular gatherings[.]" *Id.* at *2. And like the California Governor, Governor Beshear should be afforded broad latitude to craft temporary emergency public health measures to respond to COVID-19. The majority thus rejected the reasoning of the Sixth Circuit in reaching its decision.

The other factors – as they did before – weigh heavily towards dissolving the injunctions. Just last week, an outbreak of 17 cases of COVID-19 occurred at a central Kentucky church that began holding in-person services on May 13, 2020.[2] And now, the Supreme Court has recognized that the public interest is served by providing governors with broad latitude to craft responses to public health emergencies.

Based on the reasons set forth in the First Amended Motion to Dismiss and for the reasons in Chief Justice Roberts' well-reasoned Opinion, the injunctions should be dissolved and this case should be dismissed. Importantly, the Court should dissolve the injunctions even though faith-based organizations are now permitted to open in the Commonwealth and the case is moot, because it is essential that this Court restore the leeway that our federal system provides to democratically elected state officials during an emergency. "The essence of our federal system is that within the realm of authority left open to them under the Constitution, the States must be equally free to engage in any activity that their citizens choose for the common weal . . . ." *Garcia*, 469 U.S. at 546. *See also Younger v. Harris*, 401 U.S. 37, 44 (1971) ("'Our Federalism' . . . is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States."). In the event the disease returns in force, or some other emergency arises, it is essential that Governor Beshear and other state officials be able to respond promptly and with the latitude afforded to them by our federalist

---

[2] Alex Acquisto, *This Central Kentucky church reopened on May 10 and became a Covid-19 hot spot*, Lexington Herald-Leader, June 5, 2020 (last visited June 8, 2020).

system. State officials must be able to respond to this evolving public health emergency without second-guessing by the federal courts.

Beyond dissolving the injunctions, the Court should also dismiss Plaintiffs' claims for the reasons set forth in the First Amended Motion to Dismiss and the reasons set forth in *South Bay United*. This intervening law by the Supreme Court makes clear that Plaintiffs cannot prevail on their claims under the First Amendment.

Respectfully submitted,

/s/ Taylor Payne
La Tasha Buckner
General Counsel
S. Travis Mayo
Chief Deputy General Counsel
Taylor Payne
Deputy General Counsel
Laura Tipton
Deputy General Counsel
Marc Farris
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
LaTasha.Buckner@ky.gov
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov
marc.farris@ky.gov

*Counsel for Governor Andy Beshear*

7