# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

| | |
|---|---|
| MARYVILLE BAPTIST CHURCH, INC., and DR. JACK ROBERTS, | ) ) ) |
| Plaintiffs, | ) ) CASE NO. 3:20-cv-00278-DJH |
| v. | ) ) ) |
| ANDY BESHEAR, in his official capacity as Governor of the Commonwealth of Kentucky, | ) ) ) |
| Defendant. | ) ) |

### PLAINTIFFS' OBJECTIONS TO
### MAGISTRATE'S REPORT AND RECOMMENDATION ON
### PLAINTIFFS' FEE MOTION AND BILL OF COSTS

Plaintiffs, Maryville Baptist Church, Inc. and Dr. Jack Roberts, pursuant to 28 U.S.C. § 636(b) and Rule 72(b), object to the Magistrate's Report and Recommendation entered June 16, 2022 (Doc. 87, the "Report"), recommending denial of Plaintiffs' Motion for Attorney's Fees and Nontaxable Expenses (Doc. 74, the "Fee Motion") and Bill of Costs (Doc. 75). Plaintiffs specifically object to the Magistrate's determination that Plaintiffs are not prevailing parties under 42 U.S.C. § 1988, request the Court's de novo determination of Plaintiffs' prevailing party status, and request an order rejecting the Report and granting Plaintiffs' Fee Motion and Bill of Costs.

### INTRODUCTION

Plaintiffs' Fee Motion recites the relevant facts and proceedings, and establishes Plaintiffs' prevailing party status under applicable precedent, including *McQueary v. Conway*, 614 F.3d 591 (6th Cir. 2010). (Fee Mot. 1–11.) But the Magistrate's Report misapplied *McQueary* by ignoring the material differences between the fleeting, abstract relief obtained by the *McQueary* plaintiff, which was insufficient to confer prevailing party status, and the enduring, concrete relief obtained

by Plaintiffs in this case entitling them to prevailing party fees. (Rep. 3–7.) The Magistrate also invoked inapposite legal principles (Rep. 8), including a stale, non-binding concurrence of Chief Justice Roberts in the Supreme Court's non-precedential denial of emergency injunctive relief in a California church lockdown case, even though the Supreme Court shortly thereafter issued several binding and precedential decisions against similar church lockdowns, necessarily refuting the logic of the Chief Justice's prior concurrence and rendering it irrelevant to the Supreme Court's subsequent binding and unequivocal rebukes of discriminatory lockdowns like Kentucky's.

## ARGUMENT

**I.  Plaintiffs are prevailing parties because their relief came from the Sixth Circuit's and this Court's injunctions, not Governor Beshear's voluntary acts.**

As shown in Plaintiffs' Fee Motion, where a plaintiff obtains preliminary injunctive relief on a claim before a case is dismissed as moot, courts in the Sixth Circuit are to "apply a case-specific inquiry" to the prevailing party question, and "look for a court-ordered, material, enduring change in the legal relationship between the parties." *Miller v. Caudill*, 936 F.3d 442, 448 (6th Cir. 2019). The Sixth Circuit's and this Court's injunctions against enforcement of Governor Beshear's COVID-19 Orders[1] against Plaintiffs, prior to the dismissal of Plaintiffs' claims for mootness (Doc. 68), render Plaintiffs prevailing parties.

---

[1] "Orders" refers to the series of executive orders and guidances issued by Governor Beshear and his cabinet in response to COVID-19, extensively restricting when, where, and how Kentuckians may exercise their liberties, including assembling for religious worship according to conscience, while exempting myriad businesses and non-religious activities from gathering restrictions, beginning with his Executive Order 2020-15 issued March 6, 2020, declaring a state of emergency in Kentucky, and including the March 19, 2020 Order of the Cabinet for Health and Family Services (the "Gatherings Order") prohibiting "mass gatherings," which was defined to include religious worship services. (Fee Mot. 2; Stipulation of Facts Not in Dispute ("Stipulation"), Doc. 29, ¶¶ 1–2.)

The Magistrate's findings and conclusions obfuscate the value of the court-ordered relief obtained by Plaintiffs by suggesting that the injunctive relief Plaintiffs obtained from the Sixth Circuit and this Court was limited and was relief Governor Beshear would have given Plaintiffs anyway. (Rep. 1–2, 4, 6 & n.4, 8.) Not so. The timeline of the court proceedings and Governor Beshear's changes to his Orders shows that it was the Sixth Circuit and this Court that forced Governor Beshear to remove restrictions on Plaintiffs' assembling for worship at their church.

Plaintiffs commenced this case on April 17, 2020, after Kentucky police and health officials enforced Governor Beshear's Orders against Plaintiffs and their congregants on Easter Sunday, April 12, 2020. (Fee Mot. 2–4; V. Compl., Doc. 1, at 11–17.) Plaintiffs challenged the Orders' restrictions on religious worship, and moved the Court for a temporary restraining order (TRO) and preliminary injunction against enforcement of the Orders' worship restrictions (Doc. 3). On April 18, the Court issued an Order denying Plaintiffs' motion for TRO and preliminary injunction (Doc. 9, the "TRO/PI Order"). On April 24, Plaintiffs appealed the TRO/PI Order to the Sixth Circuit. (Doc. 16.) On May 2, the Sixth Circuit granted Plaintiffs an emergency injunction pending appeal (IPA), finding Plaintiffs were "likely to succeed on [their] state and federal claims, especially with respect to the [worship] ban's application to drive-in services." (Doc. 23, PageID# 288.) On May 8, after remand from the Sixth Circuit, this Court granted Plaintiffs an IPA and preliminary injunction (Doc. 35, the "IPA/PI Order"), likewise finding that "Plaintiffs have a strong likelihood of success on the merits of their [state] KRFRA claim" (PageID# 578), and that "Plaintiffs are likely to succeed on the merits of their constitutional claims," because the Governor's Orders could not survive the required strict scrutiny, even as to in-person services. (PageID## 578–580.) On May 9, the Cabinet for Health and Family Services issued an order

3

amending its Gatherings Order to immediately permit gathering for religious worship. (Doc. 36-1.)

Thus, contrary to the Magistrate's insinuation (Rep. 1–2, 4, 8), it was the Sixth Circuit's May 2 IPA (for drive-in services) and this Court's May 8 IPA/PI Order (for in-person services) that secured Plaintiffs return to worship, not any "voluntary" act of Governor Beshear. The Governor's May 8 notice that he intended to allow in-person worship services nearly two weeks later, on May 20 (Doc. 34), preceded the Court's IPA/PI Order that was issued the same day (Doc. 35), which required immediate removal of worship restrictions. Moreover, the Governor's May 8 notice came after the Sixth Circuit's May 2 IPA concluding Plaintiffs were likely to succeed on the merits of their challenges to the Orders, including the Orders' in-person worship restrictions.[2] Thus, there was nothing "voluntary" about the Governor's removal of worship restrictions—the injunctions restrained the Governor; he did not restrain himself. And, given that Plaintiffs obtained court-ordered relief, they need not and do not rely on the rejected "catalyst theory," contrary to the Magistrate's suggestion. (Rep. 8.)

Furthermore, the fact that the court-ordered removal of worship restrictions was still subject to "public health requirements" and "public health directives" (Rep. 6 & n.4) does not in any way undermine the value of the relief obtained by Plaintiffs. In their Complaint, Plaintiffs expressly requested the ability to assemble for worship at their church *subject to* "the social distancing and hygiene guidelines pursuant to which the Commonwealth allows so-called 'life-

---

[2] In its May 2 IPA, the Sixth Circuit found Plaintiffs were "likely to succeed on [their] state and federal claims, *especially* [not exclusively] with respect to the [worship] ban's application to drive-in services." (Doc. 23, PageID# 288 (emphasis added).) Plaintiffs' state and federal claims on which the Sixth Circuit found they were likely to succeed included their challenges to the Governor's ban on in-person worship.

sustaining' commercial and non-religious entities (e.g., beer, wine, and liquor stores, warehouse clubs, and supercenters) to accommodate large gatherings of persons without numerical limit." (V. Compl. 48–49.) Thus, the court-ordered relief obtained by Plaintiffs is precisely the court-ordered relief they requested, and that relief entitles them to prevailing party fees and costs under *McQueary*.

## II. Plaintiffs are prevailing parties because their relief was material and enduring.

The Magistrate's Report also concludes, wrongly, that Plaintiffs only achieved "fleeting success" and therefore cannot be prevailing parties under *McQueary*. (Rep. 5–7.) But the Magistrate wrongly equated Plaintiffs' enduring, concrete relief in this case, entitling them to prevailing party fees (Fee Mot. 7–11), with the fleeting, abstract relief obtained by the *McQueary* plaintiff, which was insufficient to confer prevailing party status.

This case is not like *McQueary*. The *McQueary* plaintiff challenged new Kentucky statutes that he claimed prohibited the kind of protesting at military funerals that we wanted to engage in. *See* 634 F. Supp. 2d 821, 822–824 (E.D. Ky. 2009). He had protested at a total of *three* military funerals in the past, and claimed the desire to protest again—at some point "in the future." *Id.* He obtained a preliminary injunction against prospective enforcement of the statutes, but his case was mooted by the Kentucky General Assembly's repeal of the statutes prior to his obtaining permanent relief. *Id.* at 822–830. Following an appeal and remand back to the district court to determine whether the protester prevailed by virtue of the preliminary injunction alone, *see* 614 F.3d 591 (6th Cir. 2010), the district court held he did not prevail because "the Plaintiff did not seek a preliminary injunction that would permit him to protest at a specific funeral or at a specific time and place," and, "[t]hus, the Plaintiff's claim for permanent relief did not become moot when

5

a particular event occurred." 2012 WL 3149344, at *2 (E.D. Ky. Aug. 1, 2012), *aff'd*, 508 Fed. App'x 522 (6ht Cir. 2012).

Unlike *McQueary*, this case did not involve a general constitutional challenge to the Governor's COVID-19 Orders, by an occasional churchgoer who might want to attend a worship service in the future. Rather, this case is about a pastor and a church, who lead worship *every* Sunday prior to filing, and who obtained in court the concrete right to assemble for certain, scheduled worship, *this* Sunday, and *every* subsequent Sunday. If Plaintiffs had sued for the right to assemble for Easter Sunday worship only, and had obtained injunctive relief limited to allowing their assembly on Easter Sunday, there is no doubt they would be prevailing parties under § 1988 and *McQueary*, regardless of the subsequent legislative mooting of their claims for permanent injunctive relief. *See* 614 F.3d 591, 599 (6th Cir. 2010) ("When protesters seek an injunction to exercise their First Amendment rights at a specific time and place—say to demonstrate at a Saturday parade—a preliminary injunction will give them all the court-ordered relief they need and the end of the parade will moot the case. In what way are such claimants not prevailing parties? We think they are." (citing *Young v. City of Chicago,* 202 F.3d 1000, 1000 (7th Cir.2000))). Conversely, had Plaintiffs been merely prospective worshippers (as opposed to a church and its pastor) who obtained a preliminary injunction allowing them to worship at any church, at some unspecified future date, following which their claims were mooted by legislation, then they would be more like the funeral protester plaintiff in *McQueary* who was deemed not a prevailing party. *See McQueary v. Conway*, No. 06-CV-24-KKC, 2012 WL 3149344, at *2 (E.D. Ky. Aug 1, 2012) ("He sought a permanent injunction that would enjoin the Defendant from enforcing the challenged provisions at all funerals."), *aff'd*, 508 F. App'x 522 (6th Cir. 2012).

In reality, "[h]ere, what happened doesn't fit neatly into those examples." *Miller v. Caudill*, 936 F.3d 442, 448 (6th Cir. 2019). But Plaintiffs do not need their case to be just like any other for them to be prevailing parties:

> Although preliminary-injunction winners must fit within precise parameters to establish prevailing-party status, there are many sets of facts that can fall within those boundaries. Therefore, this case need not be exactly like another case where a court held attorneys' fees were warranted. Rather, the Court views *McQueary* and the cases awarding attorneys' fees to preliminary-injunction winners on a spectrum . . . . These cases provide examples, not rules. Any other interpretation is incompatible with ***McQueary's* contextual and case-specific inquiry**. Therefore, the question is: Where does this case fall on that spectrum?

*Miller v. Davis*, 267 F. Supp. 3d 961, 980 (E.D. Ky. 2017) (emphasis added), *aff'd sub nom, Miller v. Caudill*, 936 F.3d 442 (6th Cir. 2019).

As shown in Plaintiffs' Fee Motion (at 5–11), this case is much closer to the *McQueary* example of a prevailing party protester, who obtained specific preliminary injunctive relief for a particular date and time, than *McQueary*'s actual plaintiff who obtained general preliminary injunctive relief for an unspecified future date and time. The *McQueary* plaintiff, asserting free speech rights, merely desired to possibly protest at some time in the future. Plaintiffs in this case, asserting free exercise rights, were obligated by conscience and conviction to gather for worship, and sought and obtained injunctive relief securing their rights to assemble for worship on each upcoming Sunday, for 40 specific, unique, and irrevocably completed Sunday worship services prior to dismissal for mootness. The Magistrate acknowledged the enduring nature of the benefits received by Plaintiffs and their congregants by fulfilling their religious obligations, but dismissed those benefits as "not at issue here." (Rep. 7.) Contrary to the Magistrate's *ipse dixit*, however, the enduring benefits obtained by Plaintiffs are precisely the issue for determination in the prevailing party inquiry.

This case also involved actual enforcement of the challenged polices against Plaintiffs—*McQueary* did not. The injunctive relief obtained by Plaintiffs prohibited any continuation of the Easter Sunday enforcement proceedings commenced under the Governor's Orders. (Fee Mot. 8–11.) And this Court's preliminary injunction remained in place long enough to ensure that neither the Easter Sunday 2020 enforcement proceedings nor any enforcement proceedings based on the next 25 Sundays could be prosecuted against Plaintiffs or their congregants due to the running of the applicable statute of limitations. (Fee Mot. 8–9.) *See Roberts v. Beshear*, No. 20-cv-00054-WOB-CJS, 2021 WL 3827128, at *4 (E.D. Ky. Aug. 26, 2021) (concluding one-year statute of limitations applies to same Easter Sunday notices of enforcement against Plaintiffs' congregants in separate case brought by congregants). Any risk of prosecution for violating the Orders for 26 Sundays—from Easter Sunday through October 4, 2020—was conclusively defeated by the injunction and the passage of time.[3] *Cf. McQueary*, 614 F.3d at 599. This protection from enforcement for 26 Sundays is legally irrevocable, and therefore enduring, but the Magistrate did not engage with this aspect of Plaintiffs' injunctive relief at all.

Apparently to bolster the Magistrate's conclusion that Plaintiffs' injunctive relief was not durable, the Magistrate cited Chief Justice Roberts' concurrence in the Supreme Court's denial of emergency injunctive relief against a California church lockdown scheme in *South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020). (Rep. 8.) Not only was the lone concurrence non-binding on lower courts at the time it was issued, however, its logic was also

---

[3] Although the Governor's in-person worship restrictions ostensibly gave way to voluntary worship guidelines as of May 9, 2020 (Doc. 36-1), the day after the Court's IPA/PI Order (Doc. 35), the ambiguously mandatory language in the guidelines preserved the specter of enforcement against Plaintiffs but for the injunction. (*See* Doc. 36-1 ("Faith-based organizations that have in-person services *must* implement and follow the Guidelines . . . ." (emphasis added)).)

8

soon rejected by a majority of the Supreme Court, numerous times, in a series of precedential and binding decisions against church lockdowns similar to Kentucky's, including the very California lockdown at issue in the Chief Justice's concurrence. *See Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) ("[G]overnment regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise."); *South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 717 (2021) (Gorsuch, J., statement) ("When a State so obviously targets religion for differential treatment, [the Court's] job becomes that much clearer."); *see also Gateway City Church v. Newsom*, 141 S. Ct. 1460 (2021); *Gish v. Newsom*, 141 S. Ct. 1290 (2021); *Harvest Rock Church, Inc. v. Newsom*, 141 S. Ct. 1289 (2021); *Robinson v. Murphy*, 141 S. Ct. 972 (2020); *Harvest Rock Church, Inc. v. Newsom,* 141 S. Ct. 889 (2020); *Agudath Israel of Am. v. Cuomo*, 141 S. Ct. 889 (2020); *High Plains Harvest Church v. Polis*, 141 S. Ct. 527 (2020); *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020). Thus, the Magistrate's invocation of the Chief Justice's concurrence is unavailing.

Ultimately, the court-ordered, enduring relief obtained by Plaintiffs places them squarely on the prevailing party spectrum provided by Sixth Circuit precedent:

> Our decision in *McQueary* did not announce a strict rule. . . . *McQueary* does not require a plaintiff to achieve such comprehensive success in all instances in which cases are mooted prior to the issuance of a final judicial order. That interpretation would contradict other language in *McQueary* and conflict with prevailing-party case law from the Supreme Court and our sister circuits.

*Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 540 (6th Cir. 2019) (cleaned up). Thus, where a preliminary injunction provides a plaintiff success on a "significant issue" that "achieved some benefit" and "conferred a lasting change in the legal relationship between the parties," the plaintiff prevailed. *See id.* at 542. This is especially true where, as here, the

9

preliminary injunction is left on the books for a substantial period of time, is reviewed by the appellate court (in this case the initial IPA was granted by the appellate court), where it stems "from a careful and thorough review of the evidence and the merits," and where it was not reversed or otherwise undone by the final decision in the same case, in an "active, merits-based undoing." *Id.* at 539–540. Under similar circumstances, the Eastern District of Kentucky determined plaintiffs were prevailing parties in *Ramsek v. Beshear*, No. 3:20-cv-00036-GFVT, 2021 WL 5098687, at *5–7 (E.D. Ky. Nov. 2, 2021). This Court should reach the same conclusion and hold Plaintiffs to be prevailing parties.

## CONCLUSION

For all the foregoing reasons, and those in Plaintiffs' Fee Motion (Doc. 74) and Reply in support (Doc. 85), the Court should reject the Magistrate's Report and grant Plaintiffs' Fee Motion and Bill of Costs.[4]

          Respectfully submitted,

          s/ Roger K. Gannam
          Mathew D. Staver
          Horatio G. Mihet
          Roger K. Gannam
          Daniel J. Schmid
          LIBERTY COUNSEL
          P.O. Box 540774
          Orlando, FL 32854
          (407) 875-1776
          court@LC.org
          hmihet@LC.org
          rgannam@LC.org
          dschmid@LC.org

          *Attorneys for Plaintiffs*

---

[4] Plaintiffs will supplement their Fee Motion with the additional work required of their attorneys to litigate their objections to the Magistrate's Report.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed via the Court's ECF system which will effect service upon all counsel or parties of record.

DATED this June 30, 2022.

s/ Roger K. Gannam
Roger K. Gannam
*Attorney for Plaintiffs*
